## LOMAX v. TRULL. (No. 8467.)

(Court of Civil Appeals of Texas. Dallas. May 14, 1921. Rehearing Denied June 25, 1921.)

1. **Injunction** ⬦120 — **Petition in suit to restrain defendants from conducting millinery business held good as against general demurrer.**

In a suit by a purchaser of a millinery business to restrain the vendor from re-engaging in such business in her own name after having entered into an employment contract with complainant, petition *held* good as against general demurrer.

2. **Malicious prosecution** ⬦68—**Punitive damages not recoverable for wrongfully suing out injunction.**

Punitive damages are not recoverable for wrongfully suing out a writ of injunction, no matter how improper or malicious the motive.

3. **Injunction** ⬦257 — **Fraud, malice, or oppression must be present to warrant recovery of exemplary damages for wrongfully suing out writ.**

Either fraud, malice, or oppression must be present to allow a recovery of exemplary damages for wrongfully suing out a writ of injunction if such damages are recoverable in such case.

4. **Vendor and purchaser** ⬦99 — **Payment or tender of amount due defeats rescission of executory contract for nonpayment of consideration.**

While a vendor of land under an executory contract may sue for rescission and recover the land on default of the purchaser in paying the consideration, yet the purchaser may defeat the rescission by paying or tendering the amount due.

5. **Mortgages** ⬦39—**Whether conveyances absolute in form constitute mortgage held for jury.**

In a suit to enjoin defendant from conducting in her own name a millinery business sold to plaintiff under absolute conveyances, wherein defendant contended that the conveyance constituted nothing but a mortgage, the question *held* for the jury under conflicting evidence.

6. **Estoppel** ⬦52 — **"Equitable estoppel" defined.**

"Equitable estoppel" is a bar which prevents the party against whom it is pleaded from denying the truth of a fact because the party asserting estoppel has changed his position and has parted with some right by reason of the

representation of conduct constituting the estoppel.

**7. Estoppel ⟺68(2) — Statements under oath that nothing was owing held not to estop plaintiff from claiming indebtedness under conveyance.**

In a suit to enjoin defendant from conducting a millinery business sold to plaintiff, wherein defendant claimed that the conveyance constituted but a mortgage, that plaintiff, in answer to a writ of garnishment issued out of a suit against defendant, answered under oath that he did not owe her anything, *held* not to stop plaintiff from claiming that the instruments under which he held were absolute conveyances, no element of injury to defendant appearing.

**8. Partnership ⟺9(1)—Investment of money or property in business against services of another under agreement to share profits held a partnership contract.**

A contract whereby one party puts his money or property into a business against the services and skill of another under a mutual understanding to share the profits may be said to be a partnership contract in the absence of circumstances opposing such construction.

**9. Partnership ⟺122 — Whether agreement was a partnership agreement held for jury.**

In a suit to restrain defendant from operating a millinery business under her own name in violation of an agreement, claimed by plaintiff to be one of employment, and by defendant to be one of partnership, the ascertainment of the nature of the contract was for the jury where the question was one of mutual intention and understanding not under an ambiguous instrument.

**10. Chattel mortgages ⟺40—Whether bill of sale constituted chattel mortgage held for jury.**

In a suit to enjoin defendant from operating a millinery business in her own name in violation of an agreement, whether a bill of sale by defendant to plaintiff should be construed as a chattel mortgage *held* for the jury.

**11. Reference ⟺100(3) — Motion to suppress auditor's report made two years after held properly overruled.**

A motion to suppress an auditor's report on the ground that the court had failed to prescribe his powers and duties in the order of appointment, made more than two years after such report was filed, *held* properly overruled.

**12. Appeal and error ⟺1067—Refusal of instruction as to effect of contract not reversible error where not harmonious with construction by jury.**

In a suit to enjoin defendant from conducting a millinery business in her own name in violation of an agreement claimed by plaintiff to be one of employment, but by defendant to be one of partnership, it was not reversible error to refuse to instruct that in determining the rights of the parties defendant was liable only for one-half of sums received by her where the jury had found the contract to be one of employment, and not of partnership, such contract explicitly fixing defendant's compensation.

**13. Evidence ⟺121(3) — Ex parte statements as to delivery of deed held inadmissible as res gestæ in determining whether absolute deed constituted mortgage.**

In a suit to restrain defendant from operating a millinery business in her own name in violation of agreement claimed by plaintiff to be one of employment, but by defendant to be one of partnership, under absolute conveyances intended, in fact, to be mortgages, a letter which was an ex parte statement of defendant uncommunicated to plaintiff as to delivery of the deed to plaintiff upon payment of a certain amount *held* inadmissible, as res gestæ.

**14. Evidence ⟺213(1) — Declaration and admissions in effort to settle inadmissible.**

The law favors compromise settlements and the long established policy is that declarations and admissions made in an effort to settle out of court cannot be received as evidence.

Appeal from District Court, Hill County; R. M. Vaughan, Special Judge.

Suit by J. T. Trull against Annie T. Lomax. Judgment for plaintiff, and defendant appeals. Affirmed.

Baldwin & Baldwin, of Houston, for appellant.

Dupree & Crenshaw, of Hillsboro, for appellee.

HAMILTON, J. This suit for injunction was instituted by appellee to restrain appellant from interfering with the management, conduct, and control of a business known as Trull Millinery Company, in Hillsboro, Texas. The petition alleged that on February 26, 1916, appellant conveyed to appellee a certain lot in Hillsboro, Tex., by general warranty deed, for a consideration of $6,000 "paid and to be paid as in said deed recited," and that by the execution and delivery of such deed fee-simple title to the property was divested out of appellant and vested in appellee, who immediately entered into possession, and thereafter continuously had possession and control thereof. Sale and delivery to appellee by appellant of all fixtures in the building located on the lot was alleged to have been made about the same time. And it was also alleged that on or about the date of the alleged sale of the real estate a contract between the parties was made, by the terms of which appellant bound herself to sell as soon thereafter as possible her millinery business she was then conducting in Hillsboro, and not thereafter for a period of three years to re-engage in that business in her own name in the city of Hillsboro, and by which she also bound herself to work for appellee "in his millinery store or business located at No. 126 East Elm street, in the city of Hillsboro, Tex." This number designated the premises described in the above-mentioned warranty deed.

The recited consideration moving to appel-

---

lee in this last alleged contract was to be one-half of whatever might remain of the net profits arising from said millinery business after taking therefrom $30 per month to be applied upon certain prior existing notes against the building, and also enough money to pay the taxes, insurance, incidentals, and upkeep of the building and stock. It was alleged that the contract (which was made a part of the petition) did not stipulate the duration of the employment therein provided for, and that the understanding was that it was terminatory at the will of either party.

Appellee alleged in detail interference by appellant with the conduct and management of the business. He alleged that she made purchases of goods for the business exclusively owned by him, without his permission or assent, and contrary to his instructions; that she interfered with sales by his clerks to customers; that she wrongfully took the money for sales and appropriated it to herself, claiming it as her own; that she ordered clerks employed by appellee to turn over to her money received for goods, instead of depositing it in the cash drawer, which was contrary to his instructions to such clerks; that in the early part of November, 1917, he learned that appellant had had letter heads printed bearing the following: "Mrs. Annie Lomax, Fine Millinery, 126 East Elm Street, Hillsboro, Texas"; that about November 9, 1917, appellant informed him that she had purchased millinery goods from Sanger Brothers, of Dallas, and intended to have them placed in the building on the lot deeded by her to him, and in which he was then conducting his millinery business, there to be sold and offered for sale by her. He alleged that she had no authority to purchase any goods in the name of or on the account of his business conducted in said building, and that she was either purchasing goods in the name of his business without authorization, and thereby attempting to create a liability against his business, and embarrass him in conducting it, or was buying goods in her own name for the purpose of re-engaging in the millinery business in violation of the covenant of her contract inhibiting it. He alleged other instances of violation of the contract by appellant, such as absenting herself for periods of time from the place of business where her duties of employment required her presence; and that this she repeatedly did without appellee's consent, and against his wishes and instructions.

Appellant demurred to the petition by general exception, and filed various special exceptions. She also answered by general denial, and by various special pleadings. She alleged that the conveyance of the lot described in appellee's petition was not that asserted by him, but was in fact only a mortgage, and that, although the instrument was, on its face, an absolute conveyance by general warranty deed, yet it was intended to be only a mortgage to secure appellee for the payment and assumption of various items of indebtedness then existing and to accrue against appellant in the course of the pursuit of her millinery business, and that it was so understood by both parties at the time it was delivered. She alleged that a certain recital of a cash consideration contained in the deed was untrue, and that she did not receive it. She denied that appellee had ever obtained possession of the premises described in the deed, and asserted on the contrary that she herself had continuously remained in possession of the same, exercising control, ownership, and authority over it; that she was not an employee of appellee at any time, but that the business conducted in the building was one of partnership between the parties; that the contract by which appellee asserted he had employed her evidenced and was intended to evidence a partnership relation; and that appellee had already been fully reimbursed from the net proceeds of the business for all sums he had paid out for her or on her indebtedness. She alleged that she never sold appellee any fixtures in the building, as claimed by him, but that she merely mortgaged them to him for the purpose of securing him against payment of two notes payable to third parties in the aggregate sum of $311, which were signed by him as surety for her, and also securing a $50 debt she owed him.

A temporary writ of injunction was issued in response to appellee's verified petition.

Appellant, by cross-action and reconvention, alleged that the deed to the land, the bill of sale to the fixtures, and the contract appellee alleged she had violated were all procured by fraud and deceit, and that the writ of injunction was obtained solely for the purpose of harassing, vexing, and oppressing her, and appropriating her property to his own use and benefit. She prayed for damages, actual and vindictive. She also prayed for cancellation of the deed and other instruments executed by her. She sought judgment for the lot and its rental value, and for personal property alleged to have been appropriated. She prayed that the temporary writ of injunction be dissolved, and that possession of the property be restored to her.

In reply to this pleading appellee filed an elaborate supplemental petition, fully meeting all allegations of the appellant, but its contents need not be stated.

[1] The first assignment of error and the propositions thereunder urge that the action of the trial court in not sustaining the general demurrer was error. We do not subscribe to the conclusions adduced by appellant's counsel as to the legal effect of the allegations of the petition, tested by a general demurrer. We think the petition definitely and explicitly indicated conduct upon the

part of appellee calculated to impair legal rights alleged with certainty and fullness, and clearly showed an impending injury which only an injunction would adequately relieve. Although injunction is a harsh remedy, as stated in appellant's brief, and is to be granted only upon positive averments of the equities, it is nevertheless the right of a litigant to invoke it under such facts and conditions as appellee's petition described in this particular case. We think it unnecessary to pause for a discussion of the allegations in detail, and will dispose of the assignment with the statement that there was no error in the ruling upon the general demurrer.

[2] We do not think the complaint of appellant against sustaining appellee's special exception to that portion of the answer undertaking to allege vindictive damages is well founded. The decisions in Texas seem to establish the doctrine that punitive damages are not recoverable for wrongfully suing out a writ of injunction, no matter how improper or malicious the motive may have been. Muller v. Landa, 31 Tex. 265, 98 Am. Dec. 529; Railway Co. v. Ware, 74 Tex. 47, 11 S. W. 918; Shackelford County v. Hounsfield, 24 S. W. 358. Looking to other jurisdictions, a conflict of authority appears. In some it is held that, where the wrongful action amounts to an abuse of process, or is prompted by malice, punitive damages may be recovered, while in others it is held that damages of this nature may not be recovered.

[3] However, even if such damages were recoverable, it is by no means clear to us that the allegations sufficiently show facts constituting fraud, malice, or oppression, and at least one of these elements must be present in any event, conceding such recovery to be permissible (which we do not do), to allow a recovery of exemplary damages. The pleading admits the execution of all the instruments sued upon, and expressly alleged the mutual understanding to put them in the respective forms in which they were written to accomplish an agreed purpose they do not reflect. There is no allegation of facts revealing such relative positions as to show that appellee was oppressive in obtaining the described written agreements, or that any circumstance existed implying malice on his part. Neither are facts alleged to clearly disclose any element of fraud, malice, or oppression, in legal significance, attending the institution of the suit. Connor v. Sewell, 90 Tex. 275, 38 S. W. 35.

But, conceding that the pleadings are entirely sufficient, yet the record discloses that all the facts in respect to all the transactions and relations between the parties were comprehensively developed, and the jury found, in conformity with substantial evidence, that appellee's assertions and claims were well founded, and, in effect, that the equities of the case were all on appellee's side. This be-

ing so no basis for actual damages existed and it follows that appellant, in no event, could have recovered exemplary damages.

[4] While it is true that a vendor of land under an executory contract may sue for rescission and recover the land upon default of the purchaser in paying the consideration, yet the latter may defeat the rescission by paying or tendering the amount due. The tender of the unpaid money by the purchaser when he is sued defeats the forfeiture of his title. Kauffman & Runge v. Brown, 83 Tex. 44, 18 S. W. 425. The judgment of the trial court found in this case that appellee had paid into the registry of the court the full amount he owed appellant. The court, therefore, did not err in refusing to instruct the jury, in compliance with appellant's request, to find for appellee, for the asserted reason that she was entitled to rescind the deed and recover the lot because the consideration had not been paid, and hence the third assignment of error is overruled.

The fourth and fifth assignments complain that the court erred in refusing to sustain appellant's objections to the jury's findings that the deed was not a conveyance to secure loans, and that the instrument claimed by appellee to be a bill of sale was a contract of sale, and not a mortgage of fixtures, as claimed by appellant, it being contended by appellant that these findings were without support in the evidence. Under these assignments, appellant submits propositions to the effect that the deed, bill of sale, and contract were all executed on the same date, and in furtherance of one transaction, and must all be considered together, and that when so considered they are equivalent only to a mortgage.

[5] The respective instruments by their own express terms reveal no such interrelation as that contended for by appellant. Each standing alone contains nothing to show that it relates to any transaction except that which it recites. Each is descriptive of a complete transaction, and expresses nothing to the effect that it bears any relation to any other, nor can any reasonable implication be derived from any one of them that it is a part of or connected with the others. Appellant made the issue that only one transaction took place, and that all these instruments grew out of it, but that they fail to express the true agreement. This was denied by appellee. Issue being thus joined, it could be determined only by a conclusion of the jury derived from the testimony which was clearly conflicting. The court could not take the disputed question of fact from the jury. The appellee denied that a bill of sale was delivered to him, and claimed that he bought the fixtures by oral agreement. He denied any knowledge of the bill of sale, which was put in evidence by appellant. The whole matter was involved in dispute as to

the facts, and was therefore properly submitted to the jury.

The sixth assignment of error is multifarious and argumentative, and therefore violates the rules of this court. But the propositions and statement under it indicate that it is intended to advance the legal proposition that appellee is estopped from claiming the deed to be what its stipulations import, and is estopped from denying it is a mere mortgage, because after it was executed and delivered appellee, in answer to a writ of garnishment issued out of a suit against appellant, answered under oath that he did not owe her anything. Appellant contends that under these circumstances estoppel arises out of public policy.

We are in entire sympathy with the sentiment which denounces the reprehensible act of a litigant making a deliberate oath to a material statement in a judicial proceeding, and thereafter directly and deliberately making a contradictory statement as to the same matter in still another judicial proceeding. Courts can perform no more proper or important function than to repress perjury. But we do not understand that estoppel in pais can be invoked against appellee under the circumstances of this case, even if it be conceded that his previous oath directly conflicts with his statements in this case bearing upon the question of his indebtedness to appellant.

[6, 7] Equitable estoppel is a bar which prevents the party against whom it is pleaded from denying the truth of a fact because the party asserting estoppel has changed his position, and has parted with some right by reason of the representation or conduct constituting the estoppel. No element of injury to appellant appears in this case caused by the oath made in the garnishment suit, should an estoppel not be declared. After the garnishment oath was made, she never changed her rights in any respect with reference to it. Davis v. Allison, 109 Tex. 440, 211 S. W. 980; Waxahachie Nat. Bank v. Bielharz, 94 Tex. 493, 62 S. W. 743; Llano Granite Co. v. Hollinger (Com. App.) 212 S W. 151. Besides, the facts pleaded are insufficient to interject the defense of estoppel based upon this matter. Ross v. Moskowitz, 100 Tex. 434, 100 S. W. 768; Crews v. Gulf Grocery Co., 107 Tex. 604, 182 S. W. 1096.

The affidavit was not admissible to show estoppel, but was admissible only as evidence tending to impeach and contradict appellee's testimony. The jury weighed it with all the other evidence, and the verdict disposed of it with the other proof.

[8, 9] The seventh assignment of error complains of the court's refusing to construe the contract between appellant and appellee as one of partnership, and not one of employment, and to instruct the jury that under

232 S.W.—55

the undisputed evidence the contract was one of partnership. We do not think the contract can be said to express conclusively a partnership agreement. It is subject to a construction giving it the effect of a contract of employment. A contract whereby one party puts his money or property into a business against the services and skill of another, under a mutual understanding to share the profits of the business, may be said to be a partnership contract, in the absence of facts and circumstances which oppose its being so construed. But this contract expressly states that it is one of employment, and that by it appellee is employing appellant. The agreement recites that appellant is to sell her millinery business as soon as possible, and not to again engage in such business in Hillsboro, during a period of three years, and "to work for said party of the second part in his millinery store or business located at No. 126, East Elm street, in the city of Hillsboro, Tex.," etc. Appellee alleged the contract to be one of employment. Appellant alleged it to be one of partnership. It thus became a question of ascertaining the mutual intention and understanding of the parties from extrinsic evidence, the terms of the instrument not being free from ambiguity. In these circumstances the ascertainment of the nature and effect of the contract was a question of fact for the jury.

[10] Appellant's position in contending that the bill of sale offered in evidence ought to have been construed as a chattel mortgage is also unsound. The instrument, by its terms, did not appear to be a mortgage. Its language, on the contrary, imported an absolute sale. The question as to what it was under the pleadings was one of fact, which the court properly left to the determination of the jury, and the jury's finding is supported by substantial evidence.

It appears that, at the instance of the parties to the suit, and in pursuance of an agreement between them, the court appointed an auditor to audit the books relating to all transactions and business considered by the respective attorneys to be material to the case. At the time of the appointment of the auditor in open court the attorneys for both parties were present. The court there, after making the appointment, inquired of the attorneys for both sides as to what instructions they desired to be incorporated in the order of appointment, and also inquired of them as to what books, papers, vouchers, etc., should be delivered to the auditor. The attorneys for both parties responded to these requests by the court to the effect that they—

"had the books and papers, and could and would turn over to the auditor such books and papers as were deemed necessary for him to have, and would give him such instructions as they considered necessary."

Because of such statements and agreements on the part of the attorneys, no instructions to the auditor were incorporated in the order.

Appellant, in various assignments of error, complains that the court erred in refusing to suppress the auditor's report, in admitting it in evidence, and in receiving evidence as to certain items and books considered by the auditor. ·

[11] We do not think appellant is in a position to complain of the action of the court in overruling her motion to suppress the auditor's report on the ground assigned, to the effect that the court failed to prescribe the powers and duties of the auditor in the order of appointment. The motion was filed more than two years after the appointment was made under the circumstances above stated, and also more than two years after the auditor's report was filed. The appellant made no request at the time the auditor was appointed that his·duties and authority be laid out and instructions given him in the order appointing him; but, on the contrary, acquiesced in, and, in effect, participated in procuring the appointment in the very manner now complained of. Under these circumstances the appellant ought not to have been permitted, more than two years after the auditor had acted, to thus entirely exclude his report. Moore v. Waco Building Ass'n, 19 Tex. Civ. App. 68, 45 S. W. 976. And this is especially so since the evidence upon the contest of the motion to suppress established that no data was used by the auditor which it was improper for him to use, and that none was withheld from him which he ought to have had. The agreement between the parties having been stated in open court at the time of the appointment, and not having been violated by appellee, appellant is not in a position to complain.

We perceive no error in the ruling of the court with reference to the admission of any testimony relating to the auditor's report, or to the accounts and books bearing on the transaction between the parties.

The fourteenth assignment of error is as follows:

"The court erred in refusing to give the defendant's special charge No. 5, which said special charge is as follows:

" 'The defendant requests the court to charge the jury as follows: "You are charged that, if you believe from the preponderance of the testimony the plaintiff and defendant were equally interested in the Trull Millinery Company, and that if any of the items charged by the plaintiff against the defendant were paid by him out of the funds of said Trull Millinery Company, then, and in that event, the defendant would be liable to the plaintiff for only one-half of the amount of all such sums received by her, and in making up the accounts between the respective parties in each and every instance where the money paid by the plaintiff was merely paid by him because he had in his possession the funds of the Trull Millinery Company, and were paid out of such funds, then, and in that event, you will not allow the plaintiff more than one-half of the amount claimed by such charge.' "

The court did 'not err in refusing to give the special charge embodied in this assignment of error. We think the summary of the auditor's report correctly made in appellee's counterproposition is a sufficient answer to the assignment.

Appellee's counterproposition is as follows ·

"The auditor's report credited the Trull Millinery with all moneys received from sales, and charged against it all expenses paid out, with the exception of the money advanced to the appellant on her personal account. The net profits of the business of the Trull Millinery Company were arrived at by deducting from the gross sales, plus the value of the goods on hand, the expenses of carrying on the business. No item of Mrs. Lomax's personal account' was charged as an expense against the business in the auditor's report. Mrs. Lomax was given credit for one-half of the net profits thus arrived at. Under the state of facts it would have been improper to allow appellant her full one-half of the net profits as a credit and then to only charge her on her personal account, which was not taken into consideration in arriving at the net profits, with only one-half of the money so advanced to her by appellee, and the trial court did not err in refusing appellant's special charge No. 5."

[12] But, in any event, it cannot be said that the assignment ought to be sustained, because the contract found by the jury to be one of employment, and not one of partnership, explicitly provided how appellant's compensation was to be ascertained and fixed.

The fifteenth assignment of error complains that a certain letter alleged to have been written by appellant to a Mr. Hughes shortly before the alleged date of the purchase of the house and lot should have been admitted as a part of the res gestæ. The excluded letter, so far as the record shows, was written without appellee's knowledge, and he was unaware of its existence or what it contained. The letter, which antedated the transactions involved in this case, referred to an accompanying deed from appellant to appellee conveying an interest in the lot involved in this suit. The letter contained instructions for delivery of the deed to appellee upon his paying $2,000.

[13] The principal fact in the case contended for by appellant was that the instrument in the form of a warranty deed delivered to appellee by her was intended as a chattel mortgage. We do not think the excluded letter bears any relevancy whatever to this contention. It being an ex parte statement by appellant, uncommunicated to appellee, and containing nothing tending to prove that the transaction in issue was a mortgage, and not a deed, we think it was entirely outside the field of inquiry which appellant could be permitted to explore as res gestæ.

[14] The sixteenth assignment of error is

overruled. It complains of the exclusion of a letter from appellee to appellant. The letter was clearly a suggestion of compromise of the existing disagreement. The law favors compromise settlements, and the long-established policy is that declarations and admissions made in an effort to settle out of court cannot be received as evidence.

Appellant insists that the judgment ought to be reversed, because appellee's counsel in his concluding argument used inflammatory language, unwarranted by the record or anything which preceded it, and that such unfair argument prejudiced the jury. We deem it unnecessary to discuss the assignment at length. No unfair argument or one not justified by the record ought to be permitted, and we would not hesitate to reverse the judgment and remand the cause solely because of such impropriety, if it appeared. But we do not think the argument of counsel complained of in this case was such as to require a reversal of the judgment. The argument, while by no means a model of sedate expression, undertook to state counsel's emphatic view of the conflict in the evidence, and his view of the incidental effect of the jury's deducing from it findings favorable to appellee; and under the state of the record we cannot say it was designed or calculated to inflame the minds of the jury or prejudice them, and thereby cause them to disregard or improperly weigh the evidence in appellant's behalf.

All assignments of error presented in appellant's brief have been carefully considered, and are disposed of in the foregoing discussion. In our opinion, none of them presents any reversible error.

The case is one whose determination in the main depends upon the facts, which were found against appellant by the court and jury, and, there being nothing in the record to warrant us in disturbing the judgment entered in accordance with those findings, we will affirm it.

Judgment is affirmed.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes